**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

FILED

APR 0 6 2021

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____,DEPUTY

JESS Q. EDDY,

     Plaintiff,

v.

DAVID PRATER, Individually and
Officially, DISTRICT ATTORNEY
FOR THE COUNTY OF OKLAHOMA,
STATE OF OKLAHOMA,

BOARD OF COUNTY
COMMISSIONERS, COUNTY OF
OKLAHOMA,

TOMMIE JOHNSON, OKLAHOMA
COUNTY SHERIFF, Individually and
Officially,

JIM ANDERSON, Individually and as an
employee of the Oklahoma County Sheriff,

DAVID BROWN, Individually and as an
employee of the Sheriff,

     Defendants.

Case No.

# CIV 21 0302

# HE

JURY TRIAL DEMANDED

*"Freedom of expression is the matrix, the indispensable condition, of nearly every
other form of freedom."* — *Justice Benjamin Cardozo*

## COMPLAINT

COMES NOW, Plaintiff, Jess Q. Eddy, *pro se* before this Court, and for his claims

against Defendants, David Prater, Individually and Officially as District Attorney of the

County of Oklahoma; Board of Commissioners of the County of Oklahoma; Tommie

Johnson, Individually and Officially as Oklahoma County Sheriff; Jim Anderson, Individually and as an Employee of the Oklahoma County Sheriff Deputy; and David Brown, Individually and as an Employee of the Oklahoma County Sheriff Deputy, submits the following:

## PARTIES

1.   Plaintiff Jess Q. Eddy ("Plaintiff") is a thirty-one (31) year old, male who resided in Oklahoma County, State of Oklahoma at all times relevant.

2.   Defendant David Prater ("Defendant Prater") is a resident of Oklahoma County, State of Oklahoma and was acting under color of law as the duly elected District Attorney for the County of Oklahoma, State of Oklahoma at all times relevant.

3.   Defendant Board of Commissioners of the County of Oklahoma ("Defendant Board" or "Defendant Commissioners") is the duly elected and constituted governing body of Oklahoma County, Oklahoma, has the power to sue and be sued, administers and oversees the governmental functions of Oklahoma County, Oklahoma, is responsible for the training and supervision of law enforcement officers assisting the Board with public meetings it conducts, and is located within the boundaries of the Western District of Oklahoma at all times relevant.

4.   Defendant Oklahoma County Sheriff ("Defendant Sheriff") is the duly elected Sheriff for the County of Oklahoma, has the power to sue and be sued, is responsible for the supervision and training of deputies/employees of the Oklahoma County Sheriff's Office, and is located within the boundaries of the Western District of Oklahoma at all times relevant.

2

5.     Defendant Oklahoma County Sheriff Deputy Jim Anderson ("Deputy Anderson") is an employee of the Oklahoma County Sheriff's Office, was acting under color of law, and was performing the majority of his duties for the Sheriff within the boundaries of the Western District of Oklahoma at all times relevant.

6.     Defendant Oklahoma County Sheriff Deputy David Brown ("Deputy Brown") is an employee of the Oklahoma County Sheriff's Office, was acting under color of law, and was performing the majority of his duties for the Sheriff within the boundaries of the Western District of Oklahoma at all times relevant.

## JURISDICTION AND VENUE

7.     Jurisdiction in this court is appropriate pursuant to 28 U.S.C. §§ 1331, 1367 as Plaintiff's claims involve matters or issues under federal law, and the Court has supplemental jurisdiction over Plaintiff's Oklahoma Law claims.

8.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391, as the Defendants reside, conduct business, may be located and served, and the substantial part of the events and/or omissions giving rise to this action occurred within the boundaries of the Western District of Oklahoma.

## STATEMENT OF FACT

9.     At all times relevant, Plaintiff was a publicly known community organizer and activist, in association with members of a protected class, Black Americans, and was involved in the organization of act(s) and/or event(s) of public expressions concerning racism against Black Americans.

10.     Preceding Saturday, May 30, 2020, Plaintiff was involved in the organization of protests to take place and which took place in Oklahoma City on May 30 and 31, 2021.

11.     In the evening of Saturday, May 30 and the afternoon of May 31, 2020, Plaintiff attended a protest to exercise, and facilitate the exercise of other's, First Amendment expression responsive to the murder of George Floyd and racism within policing and the criminal justice system in Oklahoma City, Oklahoma County, the State of Oklahoma, and the United States of America.

12.     On Monday, June 1, 2020, Plaintiff was present with other leaders of Black Lives Matter OKC and made remarks at a press conference at Oklahoma City City Hall in regard to recent events and the release of the list of demands. Specifically, Plaintiff publicly implored white persons to refrain from performing acts of vandalism.

13.     In the aftermath of the numerous arrests on May 30 and 31, Plaintiff organized local criminal defense attorneys for the provision of legal counsel to arrested persons and facilitated the arrested protesters in obtaining *pro bono* legal counsel therefrom.

14.     Prior to June 26, several dozen protesters, including Plaintiff, continued to protest in the vicinity of the Oklahoma City Police Department Headquarters and the Oklahoma County Detention Center ("Jail"). On numerous occasions, Plaintiff went to the vicinity to de-escalate tensions between OKCPD officers and protesters. On each occasion, a protester present in the vicinity or another community member advised and/or requested the assistance of the Plaintiff because OKCPD officers were provoking or harassing protesters.

4

15.     On Friday, June 26, 2020 Defendant Prater charged approximately 20 people, predominantly persons who had been arrested on May 30/31, with a number of felony charges in Oklahoma County District Court, including charges of Terrorism and Rioting under Oklahoma Law.

16.     On or about Friday, June 26, 2020, Defendant Prater publicly stated that the persons charged were "criminals" and "diabolic" and further stated "It is concerning and bewildering that this organization has chosen to defend criminals who are violent, exploitive and unscrupulous"—in reference to Black Lives Matter Oklahoma City.

17.     Defendant Prater's statements constitute a breach of the Attorney Rules of Professional Conduct. 5 O.S., Ch.1, App. 3-A, OK ST RPC, Rules 3.6, 3.8.

18.     On Monday, June 29, 2020, bonds were set by Oklahoma County District Judge Ray Elliot in amounts far exceeding the applicable bond schedule, ranging from $200,000 to $1,000,000 individually—the total exceeding $4,000,000.00.

19.     Judge Ray Elliot is a white male, has a documented history of making racist remarks regarding persons of color, and is known for being a racist within the Oklahoma County and City community.

20.     Responsive to Defendant Prater's charging decisions above and the excessively high bonds, Black Lives Matter OKC leaders, including Plaintiff, planned a protest at or near the Oklahoma County Courthouse and Office building for Thursday, July 2, 2020 and publicized the protest.

21.     On or about Monday, June 29, 2020, Defendant Prater learned that individuals charged were receiving legal representation and expressed anger and outrage in response.

22.     On or about Monday, June 29, Plaintiff secured commitment from a national organization to provide funding sufficient to bond out protesters charged by Defendant Prater.

23.     At the protest on Thursday, July 2, 2020 and at numerous times since, Plaintiff described Defendant Prater as a racist terrorist, because Defendant Prater has used the powers of his office to do violence upon persons ascribing to political positions and performing speech that Defendant Prater disagrees with—with the intent of chilling such speech and perform First Amendment retaliation.

24.     Also on Thursday, July 2, 2020 and at numerous times since, Plaintiff described Defendant Prater as a "racist."

25.     Defendant Prater has abused the powers of his office to disparately and more severely prosecute and injure non-white persons.

26.     Defendant Prater is a white male and former police officer.

27.     Defendant Prater was personally offended by the Plaintiff's protected speech to criticize him and his actions and describe him as a terrorist and racist, such that Defendant Prater developed severe malice for Plaintiff.

28.     Prior to July 20, 2020, Plaintiff continued to publicly describe Mr. Prater as a "terrorist," "racist," "white supremacist," and "liar."

29.     In the afternoon of July 20, 2020, community members, including Plaintiff, went to Defendant Prater's office, the Office of the District Attorney of Oklahoma County, to request a meeting to communicate to Defendant Prater a list of demands and the reasoning behind them. Plaintiff publicly spoke critically of Defendant Prater and his actions, including a demand for Defendant Prater's resignation. Defendant Prater refused to meet with the community members requesting a meeting, by and through his agent(s), and all community members, including Plaintiff, were arrested at the Office when the office closed that day.

30.     Prior to and in the office of Defendant Prater on July 20, 2020, Plaintiff exercised First Amendment protected speech that was critical of Defendant Prater, and Plaintiff was involved in ongoing protest of Defendant Prater.

31.     Plaintiff and other members of protected classes, including and namely Black Americans, held weekly protests between July 2, 2020 and August 12, 2020 at and around the Oklahoma County Courthouse and Office Building. At such protests, Plaintiff and other protesters used voice amplifiers and yelled statements to describe Defendant Prater as a racist, terrorist, and liar.

32.     Preceding August 12 and on August 12, 2020, Defendant Prater developed and maintained animus for Plaintiff arising from Plaintiff's political speech, political associations, public conduct, public statements, personal associations, and/or First Amendment protected activity.

33.     On August 12, 2020, Defendant Board of County Commissioners conducted a public meeting, which included an agenda item that sought to restrict and eliminate public

speech on Oklahoma County property as Plaintiff and other community members had been performing in weeks prior.

34.　　Plaintiff entered the crowded public meeting from a far back corner of the large room, approximately 30 feet away from the three County Commissioners conducting the meeting and saw Defendant Prater in the other far back corner. Plaintiff approached Defendant Prater, who was sitting near Deputy Jim Anderson.

35.　　Plaintiff came within 3 to 6 feet of Defendant Prater and, while standing stationary, spoke to Defendant Prater in a voice sufficient for Defendant Prater to hear but not such that it would or did disrupt the meeting.

36.　　Plaintiff stated to Defendant Prater that he is a "lying, motherfucking racist."

37.　　Defendant Prater stood up and took steps toward Plaintiff, closing the distance between the two, giving Plaintiff and other persons witnessing the event the impression that Defendant Prater intended to escalate the situation to a point of a physical altercation.

38.　　As he approached Plaintiff aggressively, a woman got in Defendant Prater's path toward the Plaintiff, and Defendant Prater pushed her in the back, while Defendant Prater was saying "What did you say?" and Plaintiff was, responsively, restating his initial remark to Defendant Prater in a voice sufficiently low as to not disrupt the meeting.

39.　　Defendant Prater then took step(s) back and looked to Deputy Anderson, who had remained unmoved while observing the entirety of the event, and said to Deputy Anderson, "He's disrupting the meeting," which prompted Deputy Anderson to take steps forward and stand next to Defendant Prater. Deputy Anderson appeared visually hesitant

8

to engage. Defendant Prater then looked to Plaintiff to state "You're going to start that?" Defendant Prater then said to Deputy Anderson, while patting him on the arm: "He needs to leave.", which prompted Plaintiff to take steps away and remove himself from the situation.

40.     Deputy Anderson followed, approached, stood immediately next to Plaintiff, touched and/or grabbed Plaintiff and told Plaintiff: "You need to leave." Plaintiff responded to state approximately in a low or normal voice: "No, I do not."

41.     Defendant Commissioners did not order that Plaintiff should be ejected from the meeting. Defendant Commissioners were unaware of events between Defendant Prater, Deputy Anderson, and Plaintiff until: Upon further insistence that Plaintiff needed to leave the meeting by Deputy Anderson and Deputy Anderson's physical acts to begin to push Plaintiff toward the exit and remove him from the meeting, Plaintiff used a raised voice to object to the events unfolding, describing it is a sham and fascism and further describing two County Commissioners, the Court Clerk who proposed the resolution restricting free speech, and Defendant Prater who ordered the unlawful seizure as fascists.

42.     Defendant Board noticed Plaintiff and Deputy Anderson's interactions after Deputy Anderson started pushing Plaintiff and Plaintiff responded in a raised voice, but the Board did not perform any responsive action and continued with conducting the meeting.

43.     Plaintiff was forcefully removed from the meeting by Deputies Anderson and Brown and placed in handcuffs in the hallway outside of the meeting.

44.    No member of the 3 County Commissioners ruled Plaintiff was disrupting the meeting, nor the did the Board of County Commissioners.

45.    No County Commissioner nor the Board of County Commissioners directed or advised that Plaintiff should be removed from the meeting.

46.    Defendant Board observed and did nothing to stop Deputies Anderson and/or Brown from physically removing Plaintiff from the meeting.

47.    After Plaintiff's removal, numerous private persons attending the meeting spoke in raised volumes equivalent to or greater than Plaintiff's. No other persons were arrested and/or removed from the meeting.

48.    Plaintiff was incarcerated at the Oklahoma County Courthouse and at the Jail until the following day.

49.    In the August 12, 2020 meeting, Plaintiff exercised protected speech, expressing opinions on the character of elected officials and acts by elected officials, including Defendant Prater.

50.    Among the governmental functions that Defendant Board is responsible for and administers is the performance of Deputy Sheriffs of the Oklahoma County Sheriff's Office at Defendant Board's meetings.

51.    Defendant Board voluntarily undertook and undertakes the responsibility of supervising Deputy Sheriffs that assist with the provision of their meetings.

52.    All 3 County Commissioners were present in the August 12, 2020 Board of County Commissioners meeting.

53.     Defendant Commissioners personally participated by act(s) and/or omission(s) in events alleged herein and giving rise to Plaintiff's causes of action.

54.     On January 14, 2021, Senate Bill 403 was filed in the Oklahoma State Senate during the first session of the 58th Legislature of the State of Oklahoma. Senate Bill 403 provides in part:

> Section 280.  A.  It is unlawful for any person, alone or in concert with others and without authorization, to willfully disturb, interfere or disrupt state business or the business of any political subdivision, which includes publicly posted meetings, or any agency operations or any employee, agent, official or representative of the state or political subdivision.
>
> B.  It is unlawful for any person who is without authority or who is causing any disturbance, interference or disruption to willfully refuse to disperse or leave any property, building or structure owned, leased or occupied by state officials or any political subdivision or its, employees, agents or representatives or used in any manner to conduct state business or any political subdivision's business or operations after proper notice by a peace officer, sergeant-at-arms, or other security personnel.

55.     Senate Bill 403 has been submitted by its authors in response to conduct by Plaintiff and others in Oklahoma County meetings and others, because the conduct by Plaintiff and others in public meetings at Oklahoma County, including such conduct as alleged herein and occurring on August 12, 2020, is lawful conduct and not criminal conduct.

56.     On August 12, a probable cause affidavit against the Plaintiff was drafted and CPC-2020-6611 ("Affidavit") was filed on August 13, 2020.

11

57.    The Affidavit alleges events to have occurred on August 12, 2020 and alleges Plaintiff was booked into the Jail under charges of violation of Disrupting State Business, 21 O.S. § 280(B)(D), and Obstructing an Officer, 21 O.S. § 540.

58.    The Affidavit states in relevant part: "On Aug 12, 2020 around 9:15am Jess Eddy entered the BOCC taking place on the 2nd Floor of the Oklahoma County Annex at 320 Robert S Kerr Oklahoma City in Oklahoma County. Eddy went directly towards DA Prater and said something than (sic) began yelling "you fascist terrorist fucks" during the meeting. Major Anderson asked Eddy to exit the room and he refused to comply with his order. I witnessed Major Anderson in a confrontation with Eddy in which Eddy was physically resisting Major Anderson's efforts to walk him out of the BOCC room. I assisted in getting him placed against the wall and placed him in handcuffs."

59.    The affiant is Oklahoma County Sheriff Deputy, David Brown.

60.    Upon information and belief, the Affidavit was manufactured with the assistance of Defendant Prater and/or his agent(s).

61.    Defendant Prater directed and advised Oklahoma County Sheriff Deputy(s), including without limitation Deputy Anderson, in the performance of their law enforcement duties in and around events on August 12, 2020.

62.    Defendant Prater provided legal advice to Deputy Anderson.

63.    Upon information and belief, Defendant Prater and/or his agent(s) directed and advised Oklahoma County Sheriff Deputy(s), including without limitation Deputies Anderson and Brown, in the making of the Affidavit.

64.     The Affidavit is manufactured to omit pertinent information, including without limitation acts by Defendant Prater alleged herein.

65.     The Affidavit is misleading and misrepresents the facts of events taking place on August 12, 2020.

66.     The affidavit includes a material fabrication, that Deputy Anderson asked Plaintiff to leave.

67.     Presently, Defendant Prater has not filed criminal charges against Plaintiff from events taking place on August 12 or which are alleged in the Affidavit, because Plaintiff did not commit a criminal act on August 12.

68.     Defendant Prater seized Plaintiff out of anger and disagreement with Plaintiff's protected speech.

69.     Plaintiff did not disrupt the meeting prior to being seized and/or arrested.

70.     Plaintiff was seized and arrested prior to raising his voice.

71.     Plaintiff did not disrupt the meeting under Oklahoma law.

72.     Plaintiff has attended dozens of public government meetings in the same room of the same governing board and other governing boards of the Oklahoma County government and has vocalized statements in volumes similar too, the same as, and louder than that of August 12 in the presence of Sheriff Deputies, including Deputies Anderson and Brown, and has not ever been seized and/or arrested responsively.

73.     Plaintiff was seized and arrested because of Defendant Prater's animus for him and his speech, not a violation of law.

74.     Plaintiff languished in the unconstitutional squalor of the Jail for more than 12 hours.

75.     During transportation from the Courthouse to the Jail, Plaintiff and other detained persons were left in a van in the summer heat with limited ventilation for an extensive period of time, causing fright, terror, panic and physical and emotional pain among the eight persons in the van and Plaintiff for an extensive period of time.

76.     Plaintiff was subjected to and experienced the pain and suffering of arrest and incarceration and an arrest captured by and distributed by numerous media outlets, which injured and damaged Plaintiff's reputation and professional career.

77.     Defendant Prater was and is fully aware of the likelihood of persons arrested by a Sheriff Deputy and incarcerated at the Jail to experience injuries, including deprivation of constitutional rights.

78.     On March 11, 2020, a spokesperson for Kevin Stitt, the Governor of the State of Oklahoma, described act(s) by Defendant Prater to use legal proceedings against the Governor as "a political hitjob disguised as" a legal proceeding.

79.     Defendant Prater abuses the power of his position to accomplish personal and political objectives.

80.     At the time of the commencement of this action, Defendant Prater has declined to bring criminal charges against Plaintiff for Plaintiff's conduct on August 12, 2020.

81.     As Defendant Prater has commenced numerous other criminal prosecutions against Plaintiff under Oklahoma law in the courts of the State of Oklahoma that are related

to facts alleged herein, Plaintiff reserves the right to amend this complaint upon accrual of any and all further injuries.

82.   Defendant Prater's acts giving rise to Plaintiff's claims were:

    a.   Investigative

    b.   Administrative

    c.   as a witness

    d.   not intimately related to a judicial process,

    e.   outside of his quasi-judicial role,

    f.   with actual vindictiveness, and

    g.   motivated by malice and animus for the Plaintiff's protected activity and association(s).

## CAUSES OF ACTIONS

### I.   FIRST AMENDMENT VIOLATION
### 42 U.S.C. § 1983

83.   Plaintiff adopts and incorporates Paragraphs 1-82 as if fully set forth herein.

84.   This cause of action is presented against Defendant Prater, in his individual and official capacities, and Defendant Board.

85.   Defendant Prater was acting under color of law at all times relevant on August 12, 2020 and throughout the public meeting.

86.   The August 12, 2020 Meeting agenda for the Board of County Commissioners of Oklahoma County contains proposed item that was a publicly

controversial and putatively unconstitutional proposal to ban First Amendment exercise on Oklahoma County Property.

87.    Plaintiff went to the August 12, 2020 meeting with the intention of, and consistent with his previous pattern of assembling with persons who perform speech critical of government conduct and public officials in a government meeting and/or in a public space.

88.    Plaintiff's acts on August 12, 2020 are protected by the First through the Fourteenth Amendment.

89.    Plaintiff was seized by Defendant Prater in a public meeting in retaliation for Plaintiff's protected speech.

90.    Defendant Prater directed Deputy Anderson to seize Plaintiff.

91.    Deputy Anderson was acting as an agent of and under the direction of Defendant Prater when he seized Plaintiff.

92.    Defendant Prater did not have probable cause or sufficient justification to seize Plaintiff.

93.    Plaintiff did not commit a criminal act on August 12, 2020.

94.    Plaintiff was removed from a public meeting in retaliation for his protected speech, political associations and out of Defendant Prater's animus for him, causing him emotional and physical pain and suffering and deprivation of his First Amendment right to be present and make public speech in a public forum.

95.    Defendant Prater gave direction and provided legal advice to law enforcement officer(s).

96.     Defendants are not entitled to immunity, either qualifiedly or absolutely.

97.     The law establishing Plaintiff's rights to be free from the violations alleged herein was clearly established at the time of and preceding August 12, 2020, and Defendant Prater was and is knowledgeable of the law.

98.     Due to Defendant Prater's acts alleged herein, Plaintiff was deprived of his rights guaranteed by the First Amendment of the United States Constitution. Plaintiff was also incarcerated and suffered emotional and physical pain in addition to his constitutional injuries. Redress is authorized by 42 U.S.C. § 1983.

## II. FOURTH AMENDMENT VIOLATION – UNLAWFUL SEIZURE
### 42 U.S.C. § 1983

99.     Plaintiff adopts and incorporates Paragraphs 1-98 as if fully set forth herein.

100.    This cause of action is presented against all Defendants.

101.    Defendant Prater, acting under color of law, unlawfully, unjustifiably, and unreasonably seized Plaintiff on August 12, 2020.

102.    Defendant Prater directed Deputy Anderson to seize Plaintiff.

103.    Deputy Anderson was acting as an agent of and under the direction of Defendant Prater when he seized Plaintiff.

104.    Defendant Prater did not have probable cause or sufficient justification to seize Plaintiff.

105.    Plaintiff did not commit a criminal act on August 12, 2020.

106.    Defendant Prater is not entitled to immunity, either qualifiedly or absolutely.

107.   The law establishing Plaintiff's rights to be free from the violations alleged herein was clearly established at the time of and preceding August 12, 2020, and Defendant Prater was and is knowledgeable of the law.

108.   Due to Defendant Prater's acts alleged herein, Plaintiff was deprived of his rights guaranteed by the Fourth Amendment of the United States Constitution. Plaintiff was also incarcerated and suffered emotional and physical pain in addition to his constitutional injuries. Redress is authorized by 42 U.S.C. § 1983.

### III.   FOURTH AMENDMENT VIOLATION
### FALSE ARREST/IMPRISONMENT
### 42 U.S.C. § 1983

109.   Plaintiff adopts and incorporates Paragraphs 1-108 as if fully set forth herein.

110.   This cause of action is presented against all Defendants.

111.   Defendant Prater, acting under color of law, unlawfully, unjustifiably, and unreasonably directed Deputy Anderson to seize Plaintiff on August 12, 2020, which was the proximate cause of Plaintiff's arrest and incarceration.

112.   Due to Defendants' acts alleged herein, Plaintiff was deprived of his rights guaranteed by the Fourth Amendment of the United States Constitution. Plaintiff was unlawfully incarcerated and suffered emotional and physical pain in addition to his constitutional injuries. Redress is authorized by 42 U.S.C. § 1983.

### IV.   INADEQUATE SUPERVISION AND TRAINING
### 42 U.S.C. § 1983

113.   Plaintiff adopts and incorporates Paragraphs 1-112 as if fully set forth herein.

114.    This cause of action is presented against Defendants Oklahoma County Sheriff, Tommie Johnson, in his individual capacity, and Board of Commissioners.

115.    Employees of the County, Deputies Jim Anderson and David Brown, were not supervised by Defendants Sheriff and Board adequately such that performance of their duties would not allow for the constitutional violations alleged herein, including without limitation becoming subordinate agents of the District Attorney in the manner alleged herein.

116.    But for the inadequate supervision by Defendants Sheriff and Board of Deputies Anderson and Brown, Plaintiff would not have suffered deprivation of his First and Fourth Amendment rights.

117.    Employees of the County, Deputies Jim Anderson and David Brown, were not trained by Defendants Sheriff and Board adequately such that performance of their duties would not allow for the constitutional violations alleged herein, , including without limitation becoming subordinate agents of the District Attorney in the manner alleged herein.

118.    But for the inadequate training of Deputies Anderson and Brown by Defendants Sheriff and Board, Plaintiff would not have suffered deprivation of his First and Fourth Amendment rights.

119.    The law establishing Plaintiff's rights to be free from the violations alleged herein was clearly established at the time of and preceding August 12, 2020, and Defendants Sheriff and Board were and are knowledgeable of law.

120.   Due to Defendants Sheriff and Board's acts and/or omissions alleged herein, Plaintiff was deprived of his rights guaranteed by the First and Fourth Amendment of the United States Constitution. Plaintiff was also incarcerated and suffered emotional and physical pain in addition to his constitutional injuries. Redress is authorized by 42 U.S.C. § 1983.

## IV & V.  ABUSE OF PROCESS
### Oklahoma Law and 42 U.S.C. § 1983

121.   Plaintiff adopts and incorporates Paragraphs 1-120 as if fully set forth herein.

122.   This cause of action is presented against Defendant Prater in his individual capacity and Deputies David Brown and Jim Anderson in their individual and official capacities.

123.   Above Defendants improperly used judicial process(es), as alleged herein, in the commencement of criminal litigation against Plaintiff for the purpose of injuring Plaintiff emotionally, physically, and his reputation, intimidating Plaintiff, threatening Plaintiff, chilling First Amendment speech, and retaliating against Plaintiff for his First Amendment Speech.

124.   Deputies Brown and Anderson were personally involved in and/or authored the manufactured probable cause affidavit, which Defendant Prater and/or his agent(s) used to commence criminal proceedings against Plaintiff.

125.   As a result of the aforementioned, Plaintiff suffered emotional and physical pain and suffering.

126.    Due to above Defendants' acts and/or omissions alleged herein, Plaintiff was deprived of his rights guaranteed by the First and Fourth Amendment of the United States Constitution. Plaintiff was also incarcerated and suffered emotional and physical pain in addition to his constitutional injuries. Redress is authorized by 42 U.S.C. § 1983.

## VI & VII.  MALICIOUS PROSECUTION
### Oklahoma Law and 42 U.S.C. § 1983

127.    Plaintiff adopts and incorporates Paragraphs 1-126 as if fully set forth herein.

128.    This cause of action is presented against Defendant Prater in his individual capacity and Deputies Brown and Anderson in their individual and official capacities.

129.    Above Defendants improperly used judicial process(es), as alleged herein, in the commencement of criminal litigation against Plaintiff for the purpose of injuring Plaintiff emotionally, physically, and his reputation, intimidating Plaintiff, threatening Plaintiff, chilling First Amendment speech, and retaliating against Plaintiff for his First Amendment Speech.

130.    Deputies Brown and Anderson were personally involved in and/or authored the manufactured probable cause affidavit, which Defendant Prater and/or his agent(s) used to commence criminal proceedings against Plaintiff.

131.    As a result of the aforementioned, Plaintiff suffered emotional and physical pain and suffering.

132.    Due to above Defendants' acts and/or omissions alleged herein, Plaintiff was deprived of his rights guaranteed by the First and Fourth Amendment of the United States

Constitution. Plaintiff was also incarcerated and suffered emotional and physical pain in addition to his constitutional injuries. Redress is authorized by 42 U.S.C. § 1983.

## VIII. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Oklahoma Law

133.   Plaintiff adopts and incorporates Paragraphs 1-132 as if fully set forth herein.

134.   This cause of action is presented against Defendant Prater in his individual capacity.

135.   Defendant Prater's conduct alleged herein was extreme and outrageous conduct done intentionally or recklessly, and it resulted in severe emotional distress in Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, premises considered and for the reasons set forth herein, Plaintiff respectfully requests this Court order the following relief:

> A. Declaratory Judgement in favor of Plaintiff's claims against Defendants;
>
> B. Award of actual, emotional and physical damages to Plaintiff for his injuries sustained as a result of all Defendants' acts and/or omissions in excess of $75,000.00;
>
> C. Award of punitive damages to Plaintiff for his injuries sustained as a result of Defendants' act(s) and/or omission(s);
>
> D. Prospective equitable relief in the form of an order from this Court enjoining Defendant Prater from further injuring Plaintiff through the powers of his office;

E.  Any such other relief the Court deems equitable and appropriate; and

F.  Plaintiff's costs and fees.

Respectfully,

Jess Q. Eddy
419 W. Hill Street
Oklahoma City, Oklahoma 73118
Email: jesseddy@icloud.com
Phone: 405-627-1801

Plaintiff *Pro Se*

23